929 So.2d 13 (2006)
Larry Edward HICKS, Appellant,
v.
STATE of Florida, Appellee.
No. 2D04-2640.
District Court of Appeal of Florida, Second District.
January 27, 2006.
*14 James Marion Moorman, Public Defender, and Cynthia J. Dodge, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Susan D. Dunlevy, Assistant Attorney General, Tampa, for Appellee.
VILLANTI, Judge.
Larry Hicks challenges his convictions for burglary (count 1) and grand theft (count 2), which were entered after he pleaded no contest to the charges and reserved his right to appeal the trial court's denial of his dispositive motion to suppress.[1] On appeal, Hicks argues that the search of files on a laptop computer found in his car violated his Fourth Amendment rights. We affirm the trial court's denial of Hicks' motion to suppress because Hicks failed to establish that he had a reasonable expectation of privacy in the stolen laptop and thus failed to establish that his Fourth Amendment rights were violated. We write to discuss the state of the law concerning a defendant's reasonable expectation of privacy in stolen property, an issue previously addressed in Florida only in the context of stolen vehicles.
The charges against Hicks stem from an incident in which an officer in an unmarked police car, Deputy Whitney, was conducting a surveillance investigation for burglaries and vandalism in a residential area. At 2:35 a.m., on September 8, 2002, Deputy Whitney observed a white car occupied by two males. The car had its interior light turned on and was stopping in front of multiple residences. The car did not have a tag displayed. The driver of the car stopped at one residence, shut off the headlights, reversed, pulled into the driveway of another residence, stayed for three to five minutes, reversed, and then drove down the street without headlights. Deputy Whitney initially thought that the car belonged to a newspaper delivery man, but when it passed him, he saw that there *15 were no newspapers in the car. His suspicions aroused, Deputy Whitney called for a marked police car to stop the white car based on his observations. Two officers in marked cars, Deputy McKee and Sergeant Perkins, arrived within two to three minutes, and they also observed the white car driving without headlights or a visible tag. Deputy McKee initiated a traffic stop, approached, and asked the driver, Hicks, for his driver's license, registration, and proof of insurance. Hicks replied that he did not have any of the requested items with him. Deputy McKee asked Hicks what he was doing in the area. Hicks replied that "he was looking for J.R." but was unable to provide J.R.'s last name, phone number, address, or age. Deputy McKee then asked to search the car. Hicks responded, "Why not? Go ahead, you are not going to find anything."
In searching the car and its trunk, Deputy McKee found an "abundance of property that was located throughout the vehicle," including a CD player, a leaf blower, a weed-eater, a gold heart locket, a dolphin bracelet, and black flashlights, among other things. Sergeant Perkins also found mail with someone else's address on it. The address to which the mail was directed was located nearby. Upon finding the mail, Sergeant Perkins went to the addressee's house, spoke to the addressee, and determined that Hicks did not have permission to take the mail. Sergeant Perkins brought the addressee to the scene of the traffic stop, and the addressee said that he did not recognize Hicks or the other man in the car.
Sergeant Perkins also found a briefcase in the backseat containing a laptop computer. At some point, Hicks told the officers that his uncle in Orlando had given him the computer. More deputies responded to the scene, including Deputy Ogg. When Deputy Ogg arrived, he learned that there was some suspected stolen property in the white car. Deputy Ogg noticed the computer sitting on the outside of the trunk. Believing "[t]here was prior consent to search the vehicle and objects therein," he turned on the computer and started browsing the files "to locate a possible owner."
Hicks filed a motion to suppress statements made to law enforcement agents and to suppress the property recovered in the search of his car, including the computer. Hicks argued that the search of the computer files exceeded the scope of his consent to search the car. The State argued that Hicks did not have a reasonable expectation of privacy in the computer and, alternatively, that the search was consensual and the officer had probable cause. The trial court determined that it could deny the motion on probable cause grounds, concluding that Deputy McKee had "probable cause to search the vehicle (inclusive of unlocked containers and trunk) without [Hicks'] consent based on the well founded belief that [Hicks] was loitering and prowling." Hicks entered a no contest plea to the charges against him and reserved his right to appeal the trial court's denial of his motion to suppress, which the trial court ruled was dispositive. On appeal, Hicks addresses only the seizure of the computerarguing that the trial court's reasoning was incorrect.
"When reviewing a trial court's ruling on a motion to suppress, the trial court's factual findings must be affirmed if supported by competent, substantial evidence, while the trial court's application of the law to those facts is reviewed de novo." State v. D.D.D., 908 So.2d 1180, 1181 (Fla. 2d DCA 2005) (citing Ornelas v. United States, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), and Caso v. State, 524 So.2d 422 (Fla.1988)). Here, Fourth Amendment law supports the trial court's *16 decision to deny Hicks' motion to suppress the evidence obtained from the search of the computer. As the State argued below, Hicks did not have a reasonable expectation of privacy in a computer that he did not lawfully possess and to which he asserted no property or possessory interest at the suppression hearing.[2]
The United States Supreme Court has held that Fourth Amendment rights are personal and a defendant has the burden to establish that his own Fourth Amendment rights have been infringed.[3]Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); see also Dean v. State, 478 So.2d 38, 40 (Fla. 1985). Whether a defendant[4] has a reasonable expectation of privacy is a threshold inquiry. Rakas, 439 U.S. 128, 99 S.Ct. 421. A search violates a defendant's Fourth Amendment rights only if (1) a defendant demonstrates that he or she had an actual, subjective expectation of privacy in the property searched and (2) a defendant establishes that society would recognize that subjective expectation as objectively reasonable. Minnesota v. Olson, 495 U.S. 91, 95, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990); Smith v. Maryland, 442 U.S. 735, 740-41, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979).
There are cases from jurisdictions throughout the United States holding that a person does not have a reasonable expectation of privacy in a stolen vehicle. See, e.g., Hall v. State, 820 So.2d 113, 133 (Ala. Crim.App.1999); United States v. Hensel, 672 F.2d 578 (6th Cir.1982); United States v. Hargrove, 647 F.2d 411 (4th Cir.1981). *17 In Florida, the supreme court held that a defendant does not have a reasonable expectation of privacy in a stolen vehicle and thus cannot contest the search of the vehicle; a defendant can contest only the initial stop because the stop involves the seizure of the person. State v. Singleton, 595 So.2d 44 (Fla.1992). These cases do not limit their holdings to vehicles nor do they distinguish between vehicles and other objects.
There are at least four cases nationwide that explicitly hold that a person does not have a reasonable privacy expectation in stolen property other than a vehicle United States v. Caymen, 404 F.3d 1196, 1200 (9th Cir.2005); United States v. Wong, 334 F.3d 831 (9th Cir.2003); United States v. Lyons, 992 F.2d 1029, 1031-32 (10th Cir.1993); Pennywell v. State, 84 S.W.3d 841 (Tex.App.2002)although there is no case in Florida that does so.
In Pennywell, the defendant moved to suppress a stolen brown bag containing stolen property on the grounds that the officer lacked either probable cause to arrest the defendant or reasonable suspicion sufficient to justify detaining the defendant. In discussing the stolen bag, the Texas appellate court held that "a thief's mere possession of stolen property does not give rise to any expectation of privacy that society is prepared to accept as reasonable." Id. at 844.
In Lyons, 992 F.2d 1029, the Tenth Circuit discussed a defendant's expectation of privacy in stolen hard disks. In Lyons, the Federal Bureau of Investigation was investigating computer theft at a corporation. During the execution of a warrant to search Lyons' home, FBI agents found stolen equipment, including hard disks belonging to the corporation. Under FBI supervision, the corporation's technician searched the contents of the hard disks without obtaining a separate warrant. The technician discovered several programs stored on the disks that were apparently also stolen from the corporation. The Tenth Circuit held that Lyons failed to meet the "threshold requirement of demonstrating an expectation of privacy in the property searched [stolen hard disks]." Id. at 1032. The Tenth Circuit further held that "[i]n the absence of any evidence of" an "actual, subjective expectation of privacy," it would not even reach the issue of whether the expectation would have been reasonable. Id. at 1031-32. Lyons could not establish a violation of his Fourth Amendment rights.
In Caymen, 404 F.3d 1196, police officers suspected Caymen of stealing a laptop computer by credit card fraud. The police discovered a computer in Caymen's room. Caymen claimed that the computer was his. Not believing him, the police called a computer store that had reported a stolen laptop computer and asked the store manager to consent to a search of the computer's hard drive. Without a warrant, the police officers searched the hard drive and found child pornography. Caymen moved to suppress the evidence. The Ninth Circuit held that because Caymen "did not submit an affidavit or other evidence supporting his claim that he had honestly purchased and owned the laptop," he failed to establish a reasonable expectation of privacy in the stolen computer. Id. at 1200. The Ninth Circuit reasoned:
The Fourth Amendment does not protect a defendant from a warrantless search of property that he stole, because regardless of whether he expects to maintain privacy in the contents of the stolen property, such an expectation is not one that "society is prepared to accept as reasonable." A legitimate expectation of privacy means more than a subjective expectation of not being discovered. We held in United States v. *18 Wong that a person lacks a reasonable expectation of privacy in the contents of a laptop computer he stole. Similarly, several of our sister circuits have held that a person who steals a car does not have a reasonable expectation of privacy that entitles him to suppress what is found in a search of the stolen car.
Id. at 1200 (footnotes omitted).
As the Ninth Circuit recognized, it had a similar holding in Wong, 334 F.3d 831. In a small paragraph at the end of its opinion, the Ninth Circuit noted that Wong could not object to the search of a laptop computer that belonged to a former employer because Wong did not have a reasonable expectation of privacy in the computer. Id. at 839 ("[A] person does not have a reasonable expectation of privacy in an item in which he has no possessory or ownership interest[.]") (citing United States v. Cormier, 220 F.3d 1103, 1108 (9th Cir.2000)).
Our research has disclosed only one case that specifically refused to find that a defendant had no reasonable expectation of privacy in property determined to be stolen: McFerguson v. United States, 770 A.2d 66, 71-72 (D.C.2001). In McFerguson, officers saw two men matching a very general description frantically running in an area where a burglary had just been reported. One man was carrying a red plastic bag. After police officers stopped the men, one officer reached into the bag and opened it so that he "could see what was in there." Id. at 70. The officer saw what appeared to be a couple of cameras and a CD player, later determined to be stolen. The court rejected the government's argument that the defendant had no reasonable expectation of privacy in the stolen bag containing stolen objects. Id. at 71-72.
McFerguson's logic is inapplicable here for two reasons. First, the computer located in the briefcase in the backseat of Hicks' car was not "`sufficiently physically connected with [Hicks'] person to fall properly under the umbrella of protection of personal privacy,'" as was the McFerguson defendant's red plastic bag. See id. at 71 (quoting Godfrey v. United States, 408 A.2d 1244, 1246-47 (D.C.1979)). Second, the McFerguson court was concerned with the government's emphasis on the defendant's status as "a burglar" and the bag's "stolen" contents, reasoning that those assumed labels should not dictate whether the defendant could move to suppress the evidence. However, the Florida Supreme Court has already done exactly that in the context of stolen vehicles. See Singleton, 595 So.2d 44. Further, McFerguson never actually discussed the test articulated by the United States Supreme Courtwhether the defendant had an actual, subjective expectation of privacy that society was prepared to accept as reasonable in the recently stolen red plastic bag. 770 A.2d 66.
Hicks cites an unpublished opinion, State v. Washington, 110 Wash.App. 1012, 2002 WL 104492, at *3 (Wash.Ct.App. Jan. 28, 2002), in which a Washington appellate court upheld the suppression of the contents of a laptop computer searched without a warrant after it was taken into police custody. Hicks suggests that the discussion of probable cause in Washington is very insightful. In Washington, the court reached the question of probable cause only because the State conceded that, under Washington's doctrine of automatic standing, a defendant could challenge the search of property in which he had no lawful possessory interest. Id. at *2 n. 2.
Automatic standing gives a defendant the right to challenge a search of property in which he has no lawful possessory interest if the charged offense involves possession as an essential element *19 and the defendant possessed the object at the time of the search. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). Washington noted that the United States Supreme Court had abandoned the automatic standing rule in United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), but the Washington Supreme Court had repeatedly affirmed the rule's validity. The same is not true in Florida. In State v. Hutchinson, 404 So.2d 361 (Fla. 2d DCA 1981), and State v. Loeffler, 410 So.2d 589, 591 (Fla. 2d DCA 1982), this court found that Salvucci was controlling and rejected the automatic standing rule. Also, the State here never conceded that Hicks met his burden of establishing that his Fourth Amendment rights had been violated. Unlike the court in Washington, we do not reach Hicks' arguments concerning probable cause because he failed to meet the threshold inquiry that he had a reasonable expectation of privacy in the computer's contents.
Hicks never carried his burden of proof that his Fourth Amendment rights were violated, as discussed by the Ninth and Tenth Circuits and as held in Florida in stolen vehicle cases. Notably, Hicks did not contest the initial traffic stop, and he failed to establish a reasonable expectation of privacy in the stolen computer. Although Hicks stated at the scene of the traffic stop that his "uncle from Orlando" gave him the computer, Hicks never introduced any evidence at the suppression hearing; for example, how long he had used the computer or whether he had any programs on it. See Lyons, 992 F.2d at 1031-32 ("In the absence of any evidence of any right or interest in these items, [the defendant fails] to meet the threshold requirement of demonstrating an expectation of privacy in the property searched."). Only the officers testified at the suppression hearing. Accordingly, Hicks failed to demonstrate an actual, subjective expectation of privacy in the computer. Hicks could not contest the search of the computer's files. See Singleton, 595 So.2d 44. Even if Hicks had demonstrated an expectation of privacy, he would still have to establish that society would have accepted such an expectation as reasonablean unlikely scenario. In view of our holding, we need not address Hicks' arguments regarding consent and probable cause.
We affirm the trial court's judgments and sentences on counts 1 and 2 entered after it denied Hicks' motion to suppress evidence found after an officer perused the files on the computer's hard drivenot because of a bright line rule that thieves never have a reasonable expectation of privacy in stolen property but because Hicks failed to carry his burden of proof that his Fourth Amendment rights were violated. We also affirm Hicks' convictions for two counts of trespass, three counts of petit/retail theft, and one count of loitering or prowling because he has not raised any argument on appeal concerning those convictions.
Affirmed.
WALLACE, J., Concurs.
FULMER, C.J., Dissents with opinion.
FULMER, Chief Judge, Dissenting.
I respectfully dissent. Hicks moved to suppress numerous items that were recovered from his vehicle. At the initial suppression hearing held on November 18, 2003, the trial court asked the State if it was ready to proceed with its witnesses, and the State indicated it was ready to present four witnesses. The State then presented the testimony of four officers who took part in the traffic stop and detention of Hicks. The State did not assert at this hearing that Hicks lacked a reasonable *20 expectation of privacy in the laptop computer.
The first witness, Officer Whitney, testified that he directed another officer to stop the vehicle after he observed the suspicious actions of the driver. After the car was stopped, Officer Whitney proceeded to the location of the stop to conduct a loitering and prowling investigation. Officer Whitney questioned Hicks and testified to statements that Hicks made in response to questioning. According to Officer Whitney, "[Hicks] had told me that he was with his friend, the passenger[,] all day watching games at his house. And he also told me that the lap top that was in his vehicle was given to him by his uncle in Orlando."
The next witness, Officer McKee, testified that he made the traffic stop after he was contacted by Officer Whitney in regard to the driver's suspicious actions. After making the stop, Officer McKee asked Hicks for consent to search the vehicle. In the search of the vehicle, Officer McKee located the laptop. The following colloquy occurred at the hearing:
Q. [by prosecutor]: Okay. Now, did you locate a computer in the car?
A. [by officer]: Yes, yes Sir.
Q. Uh, through your investigation at any point was the computer turned on?
A. Yes, Sir.
Q. Now was this after the consent to search and charges of grand theft [of mail] had been placed on Mr. Hicks?
A. This was after the consent and the charges of theft, yes Sir.
Q. Okay. Was it determined that the computer was also stolen?
A. It was.
Q. So, the computer did not belong to Mr. Hicks?
A. Correct.
Officer Perkins next testified for the State. He participated in the search of the vehicle. In regard to the laptop, he testified, "In the back of the vehicle I located a computer. But, later identified that as being taken during a burglary." On cross-examination, Officer Perkins testified that he located the laptop in a briefcase in the backseat but he did not remember being the one who pulled the computer out of the car. On redirect, the State asked, "During your investigation did you determine that the computer was stolen?" The officer answered, "Yes, we did."
The final witness, Officer Ogg, testified that when he arrived at the scene, the computer was sitting on the trunk. He testified:
A. [by officer]: I turned the computer on and started browsing the files to locate a possible owner.
Q. And did you locate a possible owner?
A. Yes, I did.
Q. Was the owner Larry Hicks?
A. No.
Q. Was the owner [the passenger]?
A. No, it was not.
Q. Who did you determine to be the owner of that?
A. Susan McDonald.
Q. And did you confirm that she was the owner of that computer?
A. At that exact time, no I did not.
Q. Later on through the investigation was it determined?
A. Yes.
Q. Was it also determined that Mr. Hicks or [the passenger] did not have permission to have that computer?
A. Yes it was.
The State rested, and the defense did not present any witnesses. The court ended *21 the hearing, indicating that arguments would be heard at a later date.
The hearing resumed on November 20, 2003, for closing arguments. The defense asserted that Hicks' consent to search the vehicle did not extend to the search of the laptop computer or the trunk. The State argued that Hicks did "not have standing to object to stolen property." It argued, "he has no standing to object to the search of the computer bag. Because, it did not belong to him." The defense responded that Hicks owned the car and had an expectation of privacy within his own car. It argued that the issue was whether the consent to search the car included consent to open the laptop computer and boot it up. The parties proceeded to argue extensively on the consent issue. The State then again argued that Hicks did not have standing to contest the search of the laptop because it did not belong to him. The court asked whether search incident to arrest was a justification. The prosecutor responded that Hicks was not under arrest at the time of the consent and search. However, the prosecutor argued, there was probable cause to search the car.
The court took the matter under advisement and later issued a written ruling denying the motion. The trial court concluded:
The Defendant contends that the search was premised on the Deputy requesting and receiving consent to search the vehicle of the Defendant. Without addressing the arguments raised by the Defendant concerning the search exceeding the consent given, this Motion can be decided on probable cause grounds. Upon receiving information from Deputy Whitney and from the observations by Deputy McKee of the Defendant driving in a residential area without lights at 2:40 a.m.; the Defendant not being able to produce a driver license, registration or insurance documentation; and upon the failure of the Defendant sufficiently explaining his presence, did not remove the fear the officer had for the safety of persons and property in the area. Based on the aforementioned circumstances, Deputy McKee had probable cause to search the vehicle (inclusive of unlocked containers and trunk) without Defendant's consent based on the well founded belief that the Defendant was loitering and prowling.
The majority concludes that the trial court's reason for denying the motion was incorrect, yet affirmance is required because the trial court's denial of the motion to suppress was right for the wrong reason. As noted by the majority, the State did not argue in this court, as it did below, that the trial court should have denied the motion based on Hicks' failure to demonstrate a reasonable expectation of privacy in the laptop. Nevertheless, the majority reasons that because the State raised the argument below that Hicks lacked a reasonable expectation of privacy in the laptop computer and Hicks did not take the witness stand to assert an ownership interest in the computer, the trial court was required to deny the motion to suppress.[5]
I would remand this case for further proceedings in order for the trial court to make an express ruling on the threshold question of whether Hicks has a reasonable expectation of privacy in the laptop. This issue is generally considered a mixed question of law and fact. See United States v. Gonzalez, Inc., 412 F.3d 1102, *22 1116 (9th Cir.2005); United States v. Cooper, 203 F.3d 1279, 1284 (11th Cir.2000). It should be addressed in the first instance by the trial judge. See State v. Deferance, 807 So.2d 806 (Fla. 4th DCA 2002).
Here, the State assumed the initial burden of proof at the hearing, ostensibly waiving its right to challenge Hicks on the threshold issue. The evidentiary portion of the hearing had concluded by the time the State raised the issue and argued that Hicks had not shown a reasonable expectation of privacy in the laptop. Therefore, on remand, I would direct that Hicks be given the opportunity to present additional evidence should he so choose in order to satisfy his burden.
NOTES
[1] Hicks also pleaded no contest to and was adjudicated guilty of two counts of trespass, three counts of petit/retail theft, and one count of loitering or prowling. However, Hicks' argument on appeal pertains to only counts 1 and 2, the convictions arising out of the seizure of a laptop computer from Hicks' car. Hicks has therefore abandoned any arguments pertaining to the other convictions.
[2] The State argued to the trial court, "And the issue still is standing[]Mr. Hicks does not have standing to contest a search of stolen property. If he wants to contest the search of his car that is fine. But, he cannot sit here and say I am contesting the search of property that did not belong to me." Thus, the State gave Hicks the opportunity to respond to this issue and the trial court an opportunity to rule on it even though the State did not specifically raise this issue in its answer brief. See Robertson v. State, 829 So.2d 901, 906 (Fla.2002) ("Th[e] longstanding principle of appellate law, sometimes referred to as the `tipsy coachman' doctrine, allows an appellate court to affirm a trial court that `reaches the right result, but for the wrong reasons' so long as `there is any basis which would support the judgment in the record.'") (quoting Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 644-45 (Fla.1999)); Aberdeen Golf & Country Club v. Bliss Constr., Inc., 932 So.2d 235, 239, n. 6, 2005 WL 2138798 (Fla. 4th DCA Sept. 7, 2005) ("The fact that the [appellee's] brief does not specifically argue the [issue] is inconsequential. A trial court's decision will be upheld on appeal if any legal theory supports it. Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150, 1152 (Fla. 1979). Applegate requires us to consider any theory on appeal that would sustain the trial court's decision, so long as it is consistent with the facts on which the decision was based.").
[3] In Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the Supreme Court also discarded reliance on the separate term "standing" in determining whether a defendant is entitled to claim the protections of the exclusionary rule. Although the term "standing" is still used in some cases, after Rakas, the inquiry should focus simply on whether the defendant's rights were violated by the allegedly illegal search or seizure. United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980).
[4] The police officer's subjective beliefs are inconsequential to the analysis because the focus of the test is on the defendant's subjective expectation of privacy. Wayne LaFave, Search & Seizure § 11.3(e), at 204 (4th ed. 2004) ("The officer's belief and the reasonableness of it, of course, are of considerable significance if there is occasion to reach the merits and determine if the search was lawful, but it has no bearing upon the question of standing. A person's standing depends upon his justified expectation of privacy, and this is not determined upon the basis of what the police believe or even necessarily upon the actual facts.").
[5] In reaching this result, the majority appears to discount Officer Whitney's testimony that Hicks told him at the scene that the laptop was given to him by an uncle. In contrast, the majority assumes as true the officers' allegations that the laptop was stolen, although no basis for this knowledge is in the record.