964 So.2d 861 (2007)
Gene David NEWKIRK, Appellant,
v.
STATE of Florida, Appellee.
No. 2D06-1304.
District Court of Appeal of Florida, Second District.
September 19, 2007.
*862 James Marion Moorman, Public Defender, and Megan Olson, Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Diana K. Bock, Assistant Attorney General, Tampa, for Appellee.
STRINGER, Judge.
Gene David Newkirk appeals his convictions and sentences for burglary of a dwelling, grand theft of a firearm, carrying a concealed firearm, possession of a short-barreled shot gun, and possession of a firearm by a delinquent. Newkirk pleaded no contest to these charges after the trial court denied his dispositive motion to suppress. Because the testimony at the suppression hearing established that Newkirk was illegally stopped, we reverse and remand for discharge.
The dispositive testimony at the suppression hearing came from Corporal David Walker. Walker testified that he was serving civil process in an unmarked police car in a residential neighborhood at 11:30 a.m. when he saw two boys running from a wooded area onto the street. Walker testified that one of the boys, who turned out to be Newkirk, was carrying something in his left hand.[1] As Newkirk ran, Walker saw him place the item in his pants and cover it with his shirt. However, Walker admitted that he could not see what the item was that Newkirk was holding.
Walker testified that he decided to detain Newkirk and his companion and question them "about what was going on." When cross-examined concerning what he was detaining them for, Walker responded, "Well, when I saw them, it was just to find out what was going on. If something had occurred at that time." In order to detain the two boys, Walker turned on his emergency lights "to let the two individuals know that I was a deputy." Walker testified that from the moment Walker activated the emergency lights, Newkirk and his companion were not free to leave.
The two boys stopped when they saw the lights, and Walker got out of his car and asked if they lived in the area. After the boys replied that they did, Walker asked whether the bulge under Newkirk's shirt was a gun. Newkirk replied that it was and lifted his shirt. Walker then saw *863 a sawed-off shot gun in Newkirk's pants. Walker testified that he did not know what the item was until Newkirk showed him the gun.
The trial court found that Walker conducted a proper investigatory stop of the two boys, and it denied Newkirk's motion to suppress based on that finding. The court specifically found that Walker had "a well-founded suspicion that there was criminal activity afoot," and thus that the stop was proper. In this appeal, Newkirk contends that the trial court's conclusion that Walker conducted a valid investigatory stop was erroneous. We agree.
In cases involving motions to suppress, this court reviews the trial court's factual findings to determine whether they are supported by competent, substantial evidence. Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); Caso v. State, 524 So.2d 422, 424 (Fla.1988); Hicks v. State, 929 So.2d 13, 15 (Fla. 2d DCA 2006). All evidence and reasonable inferences therefrom must be construed in a manner most favorable to upholding the trial court's ruling. Ornelas, 517 U.S. at 699, 116 S.Ct. 1657; Hicks, 929 So.2d at 15. However, the trial court's application of the law to the facts is reviewed de novo. Ornelas, 517 U.S. at 699, 116 S.Ct. 1657; Hicks, 929 So.2d at 15.
When considering an allegation that a particular stop was illegal, the court must be mindful that "a police officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime." Popple v. State, 626 So.2d 185, 186 (Fla.1993); see also § 901.151(2), Fla. Stat. (2005). To be valid, an investigatory stop requires "a well-founded, articulable suspicion of criminal activity. Mere suspicion is not enough to support a stop." Popple, 626 So.2d at 186. Moreover, the reasonable suspicion necessary to support an investigatory stop must exist at the inception of the stop. Terry v. Ohio, 392 U.S. 1, 19-20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); S.V.J. v. State, 891 So.2d 1221, 1223 (Fla. 2d DCA 2005).
Here, Walker candidly testified that he did not have a reasonable suspicion that Newkirk had committed, was committing, or was about to commit a crime before he stopped him. Instead, when specifically questioned on the issue, Walker testified that he just wanted to find out what was going on. Moreover, the facts as testified to by Walker do not show that Walker had a well-founded, articulable suspicion before detaining Newkirk that Newkirk was engaging in any criminal activity. Because Walker lacked any reasonable suspicion at the inception of the stop that Newkirk was engaged in criminal activity, the trial court should have granted Newkirk's motion to suppress.
In the trial court, as well as in this appeal, the State argues that Walker did not initially effect an investigatory detention of Newkirk but instead simply engaged him in a consensual encounter. The problem with the State's argument is twofold.
First, Florida law consistently holds that when an officer activates his emergency lights, that act initiates an investigatory stop, not a consensual encounter. See, e.g., Siplin v. State, 795 So.2d 1010, 1011 (Fla. 2d DCA 2001); Hrezo v. State, 780 So.2d 194, 195 (Fla. 2d DCA 2001); Young v. State, 803 So.2d 880, 882 (Fla. 5th DCA 2002); Brooks v. State, 745 So.2d 1113, 1113 (Fla. 1st DCA 1999). The reason such encounters are investigatory stops rather than consensual encounters is that the use of the emergency lights leads *864 a reasonable citizen to believe that he or she is not free to leave. Hrezo, 780 So.2d at 195; Young, 803 So.2d at 882; Brooks, 745 So.2d at 1113-14.
Here, it is undisputed that Walker activated his emergency lights to get the boys to recognize that he was a deputy and to cause them to stop and talk to him. A reasonable person would not believe that he or she was free to simply walk away from Walker's patrol car under those circumstances. Therefore, the stop cannot be properly categorized as a consensual encounter.
Second, the State's argument is contradicted by its own witness's testimony. Walker testified that the initial contact was not a citizen encounter. Walker explicitly testified that from the moment he activated his emergency lights, Newkirk and his companion were not free to leave. Walker also specifically testified that he intended to detain the boys and question them as to what was going on. Thus, any argument that the initial encounter between Walker and Newkirk was simply a citizen encounter is expressly contradicted by the testimony presented by the State.
Because the encounter between Walker and Newkirk constituted an investigatory stop and because Walker did not have the reasonable suspicion necessary to support such a stop, the trial court should have granted Newkirk's motion to suppress. Accordingly, we reverse Newkirk's convictions and sentences and remand for discharge.
Reversed and remanded for discharge.
CASANUEVA, J., and DAKAN, STEPHEN L., Associate Senior Judge, Concur.
NOTES
[1] Both Newkirk and his companion were minors at the time of the incident. The State chose to charge Newkirk as an adult in this case.