NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

DARYL J. McCLELLAND,            )
                                )
        Appellant,              )
                                )
v.                              )        Case No. 2D15-3762
                                )
STATE OF FLORIDA,               )
                                )
        Appellee.               )
_____ )

Opinion filed June 20, 2018.

Appeal from the Circuit Court for Polk
County; John K. Stargel, Judge.

Howard L. Dimmig, II, Public Defender, and
Anthony W. Surber, Special Assistant
Public Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Bilal A. Faruqui,
Assistant Attorney General, Tampa, for
Appellee.


MORRIS, Judge.

        Daryl J. McClelland appeals his judgment and sentences for two counts of

sexual battery on a person under twelve, six counts of lewd molestation, battery on a

child by throwing fluids or liquids, sixty counts of possession of child pornography, and

an offense against computer users. He argues that his Fourth Amendment rights were violated when an officer used a Yagi[1] antenna to locate and identify signals emanating from his computer which was located inside his motorhome. Because we conclude that he lacked a subjective expectation of privacy that society is willing to recognize as reasonable, we affirm.

### I. Background

Detectives from the Polk County Sheriff's Office were conducting an investigation regarding individuals who were downloading child pornography. That investigation led to the search of a house that was associated with an IP (internet protocol) address that had been identified as sharing child pornography. During the search, the detectives discovered that the residence had a Wi-Fi router that utilized radio signals which allowed Wi-Fi-enabled devices to connect to it to access the internet. All of the devices within that residence were searched, and the detectives determined that none of them had been used to download or share child pornography. The detectives learned that the Wi-Fi network at the residence was not encrypted with a password and thus any Wi-Fi-enabled device within range of the router could access the Wi-Fi network. The homeowner verified that he had not given permission to access the Wi-Fi network to anyone other than those persons residing within his own household. The detectives interviewed several nearby neighbors and determined that none of them were responsible for accessing the subject Wi-Fi network.

---

[1]This type of antenna is a "highly directional and selective shortwave antenna." Webster's Third New International Dictionary 2646 (1986). The parties disagreed below about whether this type of antenna is widely available and typically used by ordinary citizens. However, there appears to be no dispute that McClelland himself was using a similar type of antenna to obtain internet access.

The homeowner gave the detectives permission to set up a computer in his home that would allow the detectives to remotely access and monitor his Wi-Fi network. While monitoring the network, the detectives were able to determine the local IP address and MAC address (an address that is assigned to a particular Wi-Fi-enabled device by the manufacturer) of the device that had been accessing the subject Wi-Fi network and downloading and sharing the child pornography.

The detectives then utilized the Yagi antenna from outside the residence to determine where the signal that was broadcasting the MAC address was physically located. The detectives pointed the antenna in different directions and followed the signal strength. By doing so, they determined that the MAC address in question was located inside McClelland's motorhome which was parked near the residence. While performing the signal strength test, the detectives did not enter onto McClelland's property. Once the detectives determined that the signal was emanating from within McClelland's motorhome, they obtained a search warrant. During a search of the motorhome, images of child pornography were located on McClelland's computer, and McClelland made several statements and admissions.

McClelland moved to suppress all evidence of the child pornography found on his computer as well as any statements or admissions he made. He argued that the evidence was fruit of the poisonous tree because it was obtained as a result of illegal police activity: specifically, the use of the Yagi antenna to intercept the signal emanating from his computer. In response, the State filed a motion to strike McClelland's suppression motion, arguing that McClelland did not have standing to

argue a Fourth Amendment violation because he did not have a legitimate expectation of privacy since he had been illegally accessing the homeowner's Wi-Fi network.

At the suppression hearing, defense counsel argued, in relevant part, that the Yagi antenna constituted an enhanced technology which breached the expectation of privacy that McClelland had within his motorhome.  The State argued that McClelland essentially stole use of the Wi-Fi network since he had not been given permission to access it by the homeowner.  The State also argued that the detectives had not unlawfully reached into McClelland's motorhome because they were merely capturing the signals that were emanating from McClelland's computer outside of his motorhome and, therefore, that he had no expectation of privacy in such signals.

The trial court denied the suppression motion, concluding in relevant part that McClelland did not have a legitimate expectation of privacy because he was broadcasting wireless signals outside of the motorhome in order to access the Wi-Fi network belonging to someone else.  The trial court concluded that by broadcasting the signal, McClelland was essentially turning the information over to third parties and, consequently, that McClelland had no subjective expectation of privacy.  The trial court also found that any expectation of privacy here was not one that society would be willing to recognize as reasonable.  Finally, the trial court concluded that the detectives' use of the Yagi antenna was lawful because McClelland was accessing a third-party's wireless network, because the antenna was in general public use and widely available,[2] and because McClelland himself used a similar technology in order to access the network.

_____

[2]It is unnecessary for us to make any determination regarding whether this was an accurate conclusion due to our agreement with the trial court that McClelland lacked an expectation of privacy that society would be willing to recognize as reasonable.

McClelland ultimately entered an open plea to the charges, specifically reserving his right to appeal the suppression motion. The trial court adjudicated him guilty and sentenced him to consecutive life sentences for the sexual battery and lewd molestation charges, separate terms of fifteen years in prison for counts 9-20 and 21-66 of the child pornography charges (concurrent with the life sentences but consecutive to each other), five years in prison for the battery on a child and offense against computer users charges (concurrent with each other but consecutive to the child pornography sentences), and to fifteen years of sex offender probation for two remaining child pornography counts. McClelland was also designated a sexual predator.

**II. Analysis**

"A trial court's ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness and, as the reviewing court, the appellate court must interpret the evidence and reasonable inferences and deductions therefrom in a manner most favorable to sustaining the trial court's ruling." Pilieci v. State, 991 So. 2d 883, 893-94 (Fla. 2d DCA 2008) (citing Murray v. State, 692 So. 2d 157, 159 (Fla. 1997)).

While McClelland argues that the detectives conducted an unlawful search, "a Fourth Amendment search does *not* occur . . . unless 'the individual manifested a subjective expectation of privacy in the object of the challenged search[]' and 'society [is] willing to recognize that expectation as reasonable.' " Kyllo v. United States, 533 U.S. 27, 33 (2001) (second alteration in original) (quoting California v. Ciraolo, 476 U.S. 207, 211 (1986)). In Kyllo, the court held that use of a thermal imager to scan for heat signals within a person's home constituted a search because that

information—i.e., the heat signals—could not have been obtained without the use of a "sense-enhancing technology" that intruded into the interior of a home, a "constitutionally protected area." Id. at 34 (quoting Silverman v. United States, 365 U.S. 505, 512 (1961)). The court concluded that people have a reasonable expectation of privacy for conduct that occurs while inside their own home and, therefore, that use of a thermal imaging device without a warrant was "presumptively unreasonable." Id. at 40.

The concept of a subjective expectation of privacy has been expanded to the use of cell phones in Florida. In Tracey v. State, 152 So. 3d 504, 525 (Fla. 2014), the Florida Supreme Court held that a defendant "had a subjective expectation of privacy in the location signals transmitted solely to enable the private and personal use of his cell phone, even on public roads." The court further held that the defendant "did not voluntarily convey" those signals "to the service provider for any purpose other than to enable use of his cell phone for its intended purpose." Id. The court concluded that the defendant's expectation of privacy was reasonable and that "the use of [a defendant's] cell site location information emanating from his cell phone in order to track him in real time was a search within the purview of the Fourth Amendment for which probable cause was required." Id. at 526.

Relying on Kyllo and Tracey, McClelland asks us to conclude that he had a subjective expectation of privacy in using his computer within the confines of his motorhome and that such an expectation should be construed as reasonable. He further asks this court to conclude that the use of the Yagi antenna invades that reasonable expectation of privacy resulting in a search conducted in violation of the Fourth Amendment.

We reject the argument that the use of the Yagi antenna here constituted a search in violation of the Fourth Amendment. Unlike in Kyllo, McClelland's conduct in accessing the unencrypted Wi-Fi signal was not confined within his own home. Nor were the MAC address signals being distributed from his computer merely to enable McClelland to access the Wi-Fi signal for its intended purpose, making this case dissimilar to the cell phone signals in Tracey.

Rather, McClelland was illegally accessing (i.e., stealing) a third-party's Wi-Fi network by attaching an antenna similar to the one used by the detectives to his motorhome in order to capture the Wi-Fi signal and thereafter connecting his computer to the stolen Wi-Fi signal. By illegally accessing the Wi-Fi network, he was able to hide his identity while downloading the child pornography. In similar circumstances, other courts have rejected the argument that a defendant has an expectation of privacy that society is willing to recognize as reasonable. See, e.g., United States v. Stanley, 753 F.3d 114, 119 (3d Cir. 2014); United States v. Broadhurst, No. 3:11-cr-00121-MO-1, 2012 WL 5985615, at *4 (D. Or. Nov. 28, 2012).[3]

The Stanley court recognized that use of a tracking software tool and directional antenna to locate and measure the strength of radio waves was similar to the thermal imager in Kyllo because it involved "sense-enhancing technology." Stanley, 753 F.3d at 119. But the court also distinguished Kyllo on the basis that it involved a defendant confining his activities to his own home whereas Stanley's conduct in accessing his neighbor's Wi-Fi was akin to extending "an invisible, virtual arm across

_____

[3]This court has, in other contexts, acknowledged that an expectation of privacy in stolen property is not one which society would recognize as reasonable. Cf. Hendley v. State, 58 So. 3d 296, 299-300 (Fla. 2d DCA 2011); Hicks v. State, 929 So. 2d 13, 16-19 (Fla. 2d DCA 2006).

the street to the Neighbor's router so that he could exploit his [i]nternet connection." Id. at 120. "In so doing, Stanley deliberately ventured beyond the privacy protections of [his own] home[] and[,] thus, beyond the safe harbor provided by Kyllo." Id. The court further held that "while Stanley may have justifiably expected the path of his invisible radio waves to go undetected, society would not consider this expectation 'legitimate' given the unauthorized nature of his transmission." Id. (citing Rakas v. Illinois, 439 U.S. 128, 143 n.12 (1978)); see also Broadhurst, 2012 WL 5985615, at *4-*5 (holding that defendant could not invoke the protection of the Fourth Amendment against law enforcement's use of a handheld device to measure the strength of station device signals from the defendant's computer where the defendant was maintaining an unauthorized connection to his neighbor's unsecured Wi-Fi network and thus did not have a reasonable expectation of privacy in the signals).

We adopt the position taken by the courts in Stanley and Broadhurst and hold that McClelland cannot assert a subjective expectation of privacy that society would consider as reasonable or legitimate where McClelland did not confine his activities to the interior of his motorhome but instead extended "an invisible, virtual arm," Stanley, 753 F.3d at 120, outside the motorhome in order to illegally access the subject Wi-Fi network. The unlawful nature of the computer data that McClelland was accessing and downloading only further supports our holding.[4] See id.. Because there

_____

[4]Based on our conclusion that society would not consider McClelland's expectation of privacy as reasonable, it is unnecessary for us to determine whether McClelland *voluntarily* exposed his IP and MAC addresses, though we express some doubt that McClelland could successfully argue that the emanation of signals from his computer were involuntary where he also utilized an antenna to amplify the signals emanating from his computer in order to connect to the subject Wi-Fi network. See Broadhurst, 2012 WL 5985615, at *5 (concluding that defendant "voluntarily sent out a

- 8 -

was no search for purposes of the Fourth Amendment, the trial court did not err in denying McClelland's suppression motion.

Affirmed.

KHOUZAM and ROTHSTEIN-YOUAKIM, JJ., Concur.

---

signal to amplify access point signals and attach to third parties' networks with his computer" and, therefore, that "[d]efendant cannot assert a reasonable expectation of privacy in signals he intentionally emitted to connect to unauthorized networks"). But see Stanley, 753 F.3d at 122-23 (rejecting argument that defendant voluntarily exposed his signal thereby assuming the risk that it would be revealed to law enforcement and thus nullifying any expectation of privacy where law enforcement had to employ use of software and an antenna in order to determine the strength of defendant's signal).