ALTENBERND, Judge.
 

 The State charged Mont Bean in one information with trafficking in oxycodone and in another information with multiple counts of obtaining drugs from a physician by withholding information. He filed motions to suppress the evidence obtained from a pharmacy and other medical sources. The trial court granted these motions and the State appealed. We reverse and remand for further proceedings.
 

 This suppression proceeding is unusual in several respects. The trial court had considered a similar motion to suppress in another case a few days before the hearing on these motions. The trial court believed that the ruling in the earlier case controlled in this case. As a result, the trial court allowed only limited arguments and required the parties to provide brief stipulations about the facts instead of requiring the parties to present the usual evidentia-ry hearing. The case that the trial court heard a few days earlier,
 
 State v. Fernandez,
 
 36 So.3d 120 (Fla. 2d DCA 2010), was appealed to this court. A separate panel of judges has reversed that order. We likewise reverse this order.
 

 As explained below, this court concludes that the suppression issue presented to the trial court is more nuanced than the parties and the trial court realized. At least for some of the evidence that Mr. Bean wishes to suppress, his legal reasoning is based on factual assumptions that are clearly not supported by the evidence in this case. Both sides are seeking broader holdings from this court than the circum
 
 *117
 
 stances of the case warrant. We conclude that it is better to reverse on narrow procedural grounds without prejudice to the parties’ rights to pursue these complex issues at a more complete hearing on remand.
 

 I. The Facts as Best as They Can Be Divined from this Record
 

 From our limited record, it appears that the State claims that Mr. Bean went to a pharmacy inside a grocery store in Tampa, Florida. He presented the pharmacist with a “prescription” for 180 oxycodone tablets. The prescription appeared to be signed by a local doctor, but the pharmacist was suspicious about the authenticity of the signature. The pharmacist was unable to reach the doctor and decided to fill the prescription. After he had given Mr. Bean the tablets, he talked to someone in the doctor’s office and was informed that the doctor had not signed such a prescription for Mr. Bean.
 

 The pharmacist called the Tampa Police Department and reported a possible crime. The police sent a detective to the pharmacy. The pharmacist voluntarily provided the detective with the allegedly forged prescription and positively identified Mr. Bean from a photograph. The evidence obtained in this part of the investigation was obtained without a subpoena or a warrant and resulted in the first information charging Mr. Bean with trafficking in oxy-codone.
 

 The detective continued with his investigation, checking with various medical clinics and pharmacies in the neighborhood. Our record provides very limited information about this additional investigation, but it appears that additional evidence was obtained without a warrant or subpoena. That evidence resulted in the second information, charging Mr. Bean with multiple counts of obtaining drugs from a physician by withholding information. It is worth emphasizing that Mr. Bean has merely been charged with these offenses and is presumed innocent at this time.
 

 II. Difficulties with Mr. Bean’s Theory
 

 After the informations were filed, Mr. Bean moved to suppress the evidence obtained from the pharmacy in the grocery store and the evidence obtained from other medical sources. Both motions claim that the evidence was obtained in violation of section 456.057(7)(a)(3), Florida Statutes (2006). Section 456.057 regulates “health care practitioner[s]” who have “[ojwnership and control of patient records.” Subsection (7) states:
 

 Except as otherwise provided [ ], ... records may not be furnished to ... any person other than the patient or the patient’s legal representative or other health care practitioners and providers involved in the care or treatment of the patient, except upon written authorization of the patient. However, such records may be furnished without written authorization under the following circumstances:
 

 [[Image here]]
 

 3. In any civil or criminal action, unless otherwise prohibited by law, upon the issuance of a subpoena from a court of competent jurisdiction and proper notice to the patient or the patient’s legal representative by the party seeking such records.
 

 It is Mr. Bean’s theory that the detective’s investigation prior to his arrest and prior to the filing of the information could be undertaken only with the aid of a subpoena issued by a court of competent jurisdiction and with proper notice to him. Interestingly, neither motion claims that the evidence was obtained in violation of the Fourth Amendment or that it was obtained without a warrant. Mr. Bean is arguing
 
 *118
 
 that the evidence must be suppressed because the pharmacist volunteered the evidence to the detective in violation of a statute that he alleges regulates the pharmacist.
 

 We note that, at least as it relates to the allegedly forged prescription obtained from the pharmacist at the grocery store, a forged prescription is not a real medical record; it is a forged document. Moreover, pharmacists are expressly excluded from the definition of “health care practitioner,” although they may be regulated as maintainers of records under this regulatory statute.
 
 See
 
 § 456.057(2)(b). Thus, there are substantial questions about the theory for suppression that Mr. Bean presents in his written motion, but these are not the questions raised by the State at the suppression hearing.
 

 At the hearing and on appeal, Mr. Bean has not extensively argued his theory under section 456.057. Instead, he argues a similar theory under section 395.3025, Florida Statutes (2006). That statute requires a “licensed facility” to maintain the confidentiality of patient records and to provide them in a criminal action only upon the issuance of a subpoena. A pharmacy inside a grocery store does not appear to be licensed under chapter 395 because it is not a “hospital, ambulatory surgical center, or mobile surgical facility.” § 395.002(17).
 

 Finally, Mr. Bean’s motion did not expressly raise a constitutional violation under the Fourth Amendment or under Article I, sections 12 or 23, of the Florida Constitution. At least as to the allegedly forged prescription given to the detective at the pharmacy in the grocery store, this omission is logical because there is no evidence that the detective searched anyone or seized anything; the pharmacist who called police to report this possible crime appears to have willingly, if not eagerly, given the document to the detective.
 

 Section 456.057 does not contain a statutory exclusionary rule.
 
 Cfi
 
 934.03, Fla. Stat. (2006) (excluding wiretap recordings obtained in violation of chapter 934). It appears likely that Mr. Bean has shifted his analysis to section 395.3025 because of the supreme court’s decision in
 
 State v. Johnson,
 
 814 So.2d 390 (Fla.2002), which discussed the application of the exclusionary rule to a statutory violation of section 395.3025.
 

 In
 
 Johnson,,
 
 the court considered a case in which the State used an investigative subpoena to compel a hospital to provide blood alcohol records for use in a DUI manslaughter case.
 
 Id.
 
 at 392-93. We are not entirely convinced that the circumstances in
 
 Johnson
 
 equate with a pharmacist’s voluntarily giving a piece of paper to a detective that the pharmacist believes to be a forged prescription. We do not have enough information in our record to know how
 
 Johnson
 
 might apply to the records obtained in the second half of the investigation in this case. Moreover,
 
 Johnson
 
 actually held that the blood alcohol records would be admissible if the State failed to comply with the statute in good faith.
 
 Id.
 
 at 394. Good faith was not an issue considered by the trial court in this case.
 

 Finally, the
 
 Johnson
 
 opinion was a per curiam opinion in which Justice Pariente added a concurring opinion and three justices concurred in result only.
 
 Id.
 
 Given more recent discussions in the U.S. Supreme Court suggesting limitations on the exclusionary rule,
 
 [1]
 
 and the constitutional
 
 *119
 
 connection between Article 12 and the Fourth Amendment, we cannot tell from this record how a Florida court might now be required to rule on the issue of the use of the exclusionary rule in a case such as this one.
 

 III. Difficulties with the State’s Theory
 

 The State has not addressed many of the concerns that this court has raised in the preceding section. Instead, it primarily makes two arguments, neither of which is entirely satisfactory to this court. First, it argues that Mr. Bean lacks “standing” to make these arguments. It maintains that he has no expectation of privacy or posses-sory interest in forged documents. The threshold problem with this argument is that the trial court did not find and was not asked to determine whether some or all of these records were forged. Even though everyone discussed the likelihood that the first prescription was not a real medical record, the significance of that possibility seemed to evade everyone at the abbreviated suppression hearing.
 

 Second, the State argues that the statutes relied upon by Mr. Bean are trumped by the authority given to the State in section 893.07. That statute generally requires every person who engages in the dispensing of controlled substances to keep records “available for a period of at least 2 years for inspection and copying by law enforcement officers whose duty it is to enforce the laws of this state relating to controlled substances.” § 893.07(4). The State claims that this statute gives the police the right, without any suspicion whatsoever and without a warrant or subpoena, to peruse the records of any pharmacy, examining the records of any and all clients, for evidence that someone may have obtained an illegal prescription for a controlled substance. Suffice it to say, this interpretation of the statute gives us pause.
 

 The fact that the legislature requires pharmacies to keep records available for review and copying should obviously reduce. a person’s expectation of privacy about prescriptions that are filled at pharmacies. In
 
 Gettel v. State,
 
 449 So.2d 413, 414 (Fla. 2d DCA 1984), we held in a postconviction proceeding that a lawyer for a pharmacist was not ineffective when the lawyer did not file a motion to suppress evidence of forged prescriptions. In that case, the evidence was used against the pharmacist in possession of the prescriptions and not against a customer/patient.
 
 Id.
 
 Nevertheless, the duty of the pharmacist to maintain such records for review by law enforcement does not necessarily mean that law enforcement can review and copy all such records without suspicion, a warrant, or a subpoena for use in any type of legal proceeding. We have no need to reach this issue today, and we expressly do not reach this issue.
 
 [2]
 

 IV. Our Narrow Ruling
 

 The order on appeal recites that the detective “obtained Defendant’s prescriptions from a pharmacy” and makes what is probably a mixed finding of fact and law that the documents sought to be suppressed are “confidential patient records.” There is no evidence or stipulation in this record to support those determinations, and what little evidence is in the record
 
 *120
 
 contradicts these findings. Virtually all remaining aspects of the order collapse due to this error.
 

 Moreover, the order purports to make rulings under the Fourth Amendment and Article I, section 12, of the Florida Constitution when those issues were not raised in Mr. Bean’s motion. It relies extensively on section 395.3025 when there is no factual basis to determine that any licensed hospital was involved in this case and that statute was not alleged as a basis for suppression. Finally, while admitting that no constitutional issue had been raised in the motion to suppress, the order makes a determination that section 893.07(4) is “overly broad” and at least implies that it is unconstitutional when that issue was not before the court.
 

 This is not a typical suppression case in which a seizure is made without a warrant and the State has the burden to prove that it had constitutional authority to make a warrantless search and seizure.
 
 See, e.g., Riggs v. State,
 
 918 So.2d 274 (Fla.2005) (finding that the State proved exigent circumstances existed to justify warrantless entry and search of defendant’s home);
 
 Smith v. State,
 
 753 So.2d 713 (Fla. 2d DCA 2000) (finding that the State failed to meet its burden of proving defendant consented to warrantless search of his mouth). In this case, Mr. Bean maintains that the pharmacist or the State violated section 456.057(7)(a)(3) and that this statutory violation justified the exclusion of the evidence. We conclude that he has the initial burden to prove the application of this statute and he has failed in that burden.
 

 Given the abbreviated nature of the hearing on the motion to suppress and the incorrect assumption of the trial court that it could resolve this matter without a full hearing, we reverse the order on appeal without prejudice to further proceedings addressing the possible suppression of this evidence.
 

 Reversed and remanded for further proceedings.
 

 VILLANTI and LaROSE, JJ., Concur.
 

 [1]
 

 .
 
 See, e.g., Herring v. United States,
 
 - U.S. -, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009) (concluding that exclusionary rule did not apply when police arrested defendant based on rescinded arrest warrant);
 
 Hudson v. Michigan,
 
 547 U.S. 586, 126 S.Ct. 2159, 165
 
 *119
 
 L.Ed.2d 56 (2006) (concluding that exclusionary rule did not apply when police violated knock-and-announce rule when they entered defendant’s home).
 

 [2]
 

 . After oral argument in this case, the First District issued its opinion in
 
 State v. Carter,
 
 23 So.3d 798 (Fla. 1st DCA 2009). The holding in
 
 Carter
 
 is favorable to the State. In this case, we neither accept nor reject the reasoning of the First District.