KHOUZAM, Judge.
 

 The State appeals the trial court’s order granting Lori Tamulonis’s motion to suppress evidence obtained from two pharmacies by a law enforcement officer. The State relies on
 
 State v. Carter,
 
 23 So.3d 798 (Fla. 1st DCA 2009), in which the First District determined that section 893.07(4), Florida Statutes, does not require law enforcement officers to procure a search
 
 *526
 
 warrant or subpoena prior to obtaining controlled substance records from pharmacies. We find the reasoning in
 
 Carter
 
 persuasive and thus reverse the order granting Tamulonis’s motion to suppress.
 

 Tamulonis was charged with three counts of obtaining or attempting to obtain a controlled substance by fraud.
 
 See
 
 § 893.13(7)(a)(9), Florida Statutes (2007 & 2008). She filed a motion to suppress, alleging that a detective had obtained her patient profiles and prescriptions from two pharmacies without a subpoena or warrant. Tamulonis contended that sections 456.057(7)(a)(3)
 
 [1]
 
 and 395.3025(4)(d),
 
 [2]
 
 Florida Statutes (2007 & 2008), required law enforcement officers to obtain a subpoena before procuring her records.
 

 At the suppression hearing, the detective testified that he was assigned to a unit that investigates illegal prescriptions. He stated that he received information from another detective that Tamulonis was involved in a pattern of “doctor shopping.” He contacted various pharmacies and obtained Tamulonis’s patient profiles, which are “computer printouts that show the date, the prescription medication, and the doctor who prescribed it.” Based on the patient profiles, the detective determined that Tamulonis had visited multiple doctors within a thirty-day period and had obtained prescriptions for oxycodone and Oxycontin. The detective obtained Tamu-lonis’s prescriptions and showed them to the doctors. The doctors stated that when they wrote the prescriptions, they were unaware that Tamulonis had received prescriptions for similar medications from other doctors.
 

 Tamulonis argued that pharmacy records are medical records and that patients have a reasonable expectation of privacy in the records. The State responded that pharmacy records are not medical records and that section 893.07(4), Florida Statutes (2007 & 2008), authorizes law enforcement officers to obtain patient profiles and prescriptions for controlled substances without a subpoena or warrant. The court granted the motion to suppress, stating, “I don’t think that the law, the right to privacy or the Constitution, necessarily agrees with that.” The State filed a motion for rehearing. During the hearing on the motion for rehearing, the State argued that section 465.017(2)(a), Florida Statutes (2007 & 2008), when read in conjunction with section 893.07(4), gives law enforcement officers access to a pharmacy’s controlled substance records without having to obtain a subpoena. The court denied the motion for rehearing, reasoning that it was not convinced that the procedures
 
 *527
 
 used in Tamulonis’s case “would pass constitutional muster.” The written order granting the motion to suppress does not contain any legal analysis.
 

 On appeal, Tamulonis argues that her records were obtained in violation of section 456.057(7)(a)(3). However, section 456.057 regulates health care practitioners, and pharmacists and pharmacies are expressly excluded from the definition' of “health care practitioner.”
 
 See
 
 § 456.057(2)(b).
 

 Tamulonis argued below that her pharmacy records were also protected by section 395.3025. Section 395.3025, however, does not support Tamulonis’s position because the statute applies to “licensed facilities],” which are defined as “hospital[s], ambulatory surgical center[s], or mobile surgical facilities].” § 395.002(16).
 

 Pharmacists are licensed and regulated under chapter 465. Section 465.017(2)(a) provides:
 

 Except as permitted by this chapter, and chapters 406, 409, 456, 499, and 893,
 
 records maintained in a pharmacy relating to the filling of prescriptions and the dispensing of medicinal drugs shall not be furnished to any person.... Such records may be furnished in any civil or criminal proceeding, upon the issuance of a subpoena from a court of competent jurisdiction and proper notice to the patient or her or his legal representative by the party seeking such records.
 

 (Emphasis added.) Tamulonis’s records were obtained pursuant to chapter 893. Section 893.07 requires pharmacists to maintain controlled substance records, including prescription records, and to make the records “available for a period of at least 2 years for inspection and copying by law enforcement officers whose duty it is to. enforce the laws of this state relating to controlled substances.” § 893.07(4).
 

 As the First District noted in
 
 Carter:
 

 The statute does not require a subpoena, warrant, or prior notice to the patient. ... If the Legislature intended to require pharmacies to notify patients in connection with section 893.07, the Legislature would have included this requirement in the statute, as it did in statutes governing disclosure by other health care entities.
 
 See
 
 § 395.3025, Fla. Stat. (hospitals); §§ 400.0077 & 400.022(l)(m), Fla. Stat. (nursing homes); and § 456.057(7), Fla. Stat. (physicians).
 

 23 So.3d at 800. Other jurisdictions with statutes similar to section 893.07 have upheld warrantless searches of prescription records for controlled substances.
 
 See State v. Russo,
 
 259 Conn. 436, 790 A.2d 1132, 1142 (2002) (concluding that the legislature did not intend to limit law enforcement’s access to prescription records “because if it had, it easily could have expressed that intent” in the statute);
 
 Murphy v. State,
 
 115 Wash.App. 297, 62 P.3d 533, 538 (2003) (“[B]y indicating that the records shall be ‘open for inspection,’ the legislature clearly contemplated unrestricted access by the appropriate law enforcement personnel.”);
 
 see also Stone v. Stow,
 
 64 Ohio St.3d 156, 593 N.E.2d 294 (1992);
 
 State v. Welch,
 
 160 Vt. 70, 624 A.2d 1105 (1992).
 

 We recognize that these states do not have constitutional privacy provisions similar to that of Florida. We also acknowledge that the right to privacy under article I, section 23
 
 [3]
 
 of the Florida Constitution is broader in scope than that of the United States Constitution.
 
 See Winfield v. Div. of Pari-Mutuel Wager
 
 
 *528
 
 ing, 477 So.2d 544, 548 (Fla.1985). However, this right to privacy is not absolute.
 
 State v. Johnson,
 
 814 So.2d 390, 393 (Fla.2002). The Florida Supreme Court has adopted a test to assess the claim of an article I, section 23 privacy violation: First, courts must determine whether the individual possesses a legitimate expectation of privacy in the information or subject at issue.
 
 Winfield,
 
 477 So.2d at 547. If so, the burden shifts to the State to show (a) that there is a compelling state interest warranting the intrusion into the individual’s privacy and (b) that the intrusion is accomplished by the least intrusive means.
 
 Id.
 

 An individual has a privacy interest in his or her prescription records.
 
 See Douglas v. Dobbs,
 
 419 F.3d 1097, 1102 (10th Cir.2005) (finding that prescription records “contain intimate facts of a personal nature”);
 
 see also Russo,
 
 790 A.2d at 1148 (“[P]rescription records may contain information of a private nature regarding a person’s physical or mental health.”). However, “[t]he fact that the legislature requires pharmacies to keep records available for review and copying should obviously reduce a person’s expectation of privacy about prescriptions that are filled at pharmacies.”
 
 State v. Bean,
 
 36 So.3d 116 (Fla. 2d DCA2010).
 

 The State argues, and Tamulonis concedes, that the State has a compelling interest in regulating controlled substances.
 
 See Whalen v. Roe,
 
 429 U.S. 589, 598, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977) (recognizing state’s interest in monitoring the use of dangerous drugs);
 
 Johnson,
 
 814 So.2d at 393 (finding the control and prosecution of criminal activity to be a compelling state interest). We also find that section 893.07 is narrowly tailored. First, the statute only applies to controlled substance records. Second, the records do not convey information about a patient’s medical condition. Finally, such data is not available to the general public, but only to “law enforcement officers whose duty it is to enforce the laws of this state relating to controlled substances.” § 893.07(4);
 
 see also Russo,
 
 790 A.2d at 1150-51 (finding that pharmacy statute safeguards privacy interests by restricting access to controlled substance records to a limited class of persons).
 

 Accordingly, we adopt the First District’s holding in
 
 Carter,
 
 reverse the order granting Tamulonis’s motion to suppress, and remand this case for further proceedings.
 

 Reversed and remanded.
 

 DAVIS and KELLY, JJ., Concur.
 

 [1]
 

 . Section 456.057 provides in pertinent part:
 

 (7)(a) Except as otherwise provided ... such records may not be furnished to ... any person other than the patient or the patient’s legal representative or other health care practitioners and providers involved in the care or treatment of the patient, except upon written authorization of the patient. However, such records may be furnished without written authorization under the following circumstances:
 

 [[Image here]]
 

 3. In any civil or criminal action, unless otherwise prohibited by law, upon the issuance of a subpoena from a court of competent jurisdiction and proper notice to the patient or the patient’s legal representative by the party seeking such records.
 

 [2]
 

 . Section 395.3025 provides in pertinent part:
 

 (4) Patient records are confidential and must not be disclosed without the consent of the person to whom they pertain, but appropriate disclosure may be made without such consent to:
 

 [[Image here]]
 

 (d) In any civil or criminal action, unless otherwise prohibited by law, upon the issuance of a subpoena from a court of competent jurisdiction and proper notice by the party seeking such records to the patient or his or her legal representative.
 

 [3]
 

 . Article I, section 23 provides, "Every natural person has the right to be let alone and
 
 tree
 
 from governmental intrusion into the person's private life....”