WALLACE, Judge.
Without a warrant, a subpoena, or prior notice, law enforcement officers obtained Justin Hendley’s prescription records from a pharmacy. The State charged Mr. Hendley with obtaining a controlled substance by fraud. He pleaded no contest, reserving the right to appeal the denial of his dispositive motion to suppress. On appeal, Mr. Hendley argues that the law enforcement officers acted impermissibly. However, because section 893.07, Florida Statutes (2008), requires pharmacists to maintain records containing controlled substances delivered by them and to make such records available for inspection and copying by law enforcement officers, the circuit court properly denied the motion to suppress. Accordingly, we affirm Mr. Hendley’s judgment and sentence.
The State charged Mr. Hendley with obtaining a controlled substance by fraud under section 893.13(7)(a)(9), by passing a fraudulent prescription at Hedges Pharmacy in Sarasota. Before entering a no contest plea to the charge, Mr. Hendley filed a motion to suppress in the circuit court. In his motion, Mr. Hendley sought to suppress “any identification of the Defendant, prescriptions, medical records or other pharmaceutical records” that the law enforcement officers had allegedly obtained in violation of his constitutional right against unreasonable searches and seizures.[1] More specifically, Mr. Hendley argued that the law enforcement officers had obtained information from Hedges Pharmacy and from Sarasota Emergency Associates in violation of sections 395.3025(4)(d) and 465.017(2)(a), Florida Statutes (2008), without first obtaining a subpoena or a warrant and without probable cause. The State responded that the law enforcement officers had properly obtained the information in question under section 893.07(4).
The evidence at the hearing on Mr. Hendley’s motion to suppress showed that Detective Robert Armstrong, who works in the narcotics unit of the Sarasota Police Department, received a pharmacy alert bulletin in August 2008, indicating that Mr. Hendley had passed a fraudulent prescription for thirty milligrams of oxycodone, a schedule II controlled substance,[2] at another Sarasota pharmacy.[3] After receiving the bulletin, Detective Armstrong called Terry Provencal at Hedges Pharmacy and asked if Mr. Hendley had passed any prescriptions there. Ms. Provencal knew Detective Armstrong from prior contacts and investigations.
Ms. Provencal told Detective Armstrong that Mr. Hendley had filled a prescription for oxycodone the previous month that purported to be written by Dr. Barry Kru-glick. Later, Detective Armstrong learned from his partner, Detective Quin-lan, that Dr. Kruglick’s first name is “Bruce” and not “Barry.” Based on this *298 information, Detective Armstrong concluded that the prescription Mr. Hendley had presented at Hedges Pharmacy was fraudulent. The parties stipulated that Detective Quinlan then contacted Dr. Krugliek’s office at Sarasota Emergency Associates and learned that Mr. Hendley had been a patient at that office with Dr. Steven R. Newman in 2007. Later, the State obtained a copy of the prescription that Mr. Hendley had filled at Hedges under the name of Dr. Barry Kruglick. At the conclusion of the hearing, the circuit court denied Mr. Hendley’s motion to suppress, concluding that section 893.07 authorized the Sarasota detectives to obtain the information from the pharmacy without a subpoena.[4]
On appeal, Mr. Hendley argues that the Sarasota detectives improperly seized his records from Hedges Pharmacy without a warrant, a subpoena, or notice to him under sections 395.3025(4)(d) and 465.017(2)(a). Thus the circuit court erred in denying his motion to suppress. We disagree. Section 395.3025 applies to “licensed facilities],” which are defined as “a hospital, ambulatory surgical center, or mobile surgical facility.”[5] Therefore, that statute does not control whether law enforcement officers may obtain records from a pharmacy such as Hedges. See State v. Tamulonis, 39 So.3d 524, 527 (Fla. 2d DCA 2010) (stating that section 395.3025 does not apply to pharmacies); State v. Bean, 36 So.3d 116, 118 (Fla. 2d DCA 2010) (noting same); see also State v. Shukitis, 58 So.3d 406, 408, 2010 WL 4365761 (Fla. 2d DCA 2010) (citing Tamu-lonis for the foregoing proposition). Accordingly, we analyze Mr. Hendley’s argument under section 465.017(2)(a).
Section 465.017(2)(a) provides in pertinent part as follows:
Except as permitted by this chapter, and chapters 406, 409, 456, 499, and 893, records maintained in a pharmacy relating to the filling of prescriptions and the dispensing of medicinal drugs shall not be furnished to any person other than to the patient for whom the drugs were dispensed ... except upon the written authorization of such patient. Such records may be furnished in any civil or criminal proceeding, upon the issuance of a subpoena from a court of competent jurisdiction and proper notice to the patient or her or his legal representative by the party seeking such records.
(Emphasis added.) Nevertheless, section 893.07(l)(b) requires persons engaged in the dispensing or distribution of controlled substances to “maintain, on a current basis, a complete and accurate record of each substance manufactured, received, sold, delivered, or otherwise disposed of by him or her.” Section 893.07(4) further provides in pertinent part that “[e]very inventory or record required by this chapter, including prescription records, shall be maintained ... and made available for a period of at least 2 years for inspection and copying by law enforcement officers whose duty it is to enforce the laws of this state relating to controlled substances.” (Emphasis added.)
*299 In Tamulonis, this court addressed the interplay between sections 465.017 and 893.07 and concluded that section 893.07(4) authorizes “law enforcement officers whose duty it is to enforce the laws of this state relating to controlled substances” to obtain an indiyidual’s prescription records related to controlled substances without a warrant, a subpoena, or prior notice to the patient. 39 So.3d at 528 (quoting § 893.07(4)); see also Shukitis, 60 So.3d at 407-08 (noting same). Although we recognized that individuals have a privacy interest in their prescription records, we concluded that the State has a compelling interest in regulating controlled substances and that section 893.07(4) is narrowly tailored to accomplish this goal. Tamulonis, 39 So.3d at 527-28. Thus section 893.07(4) authorized Detective Armstrong — a narcotics detective investigating a pharmacy alert bulletin concerning Mr. Hendley’s passing fraudulent prescriptions for controlled substances — to obtain information from Ms. Provencal at Hedges Pharmacy with regard to Mr. Hendley’s passing a prescription for oxycodone. It follows that the circuit court properly denied Mr. Hendley’s motion to suppress under the authority of section 893.07(4).
We write further to address the State’s appellate argument that Mr. Hendley lacked standing to challenge the legality of the seizure of his prescription because he did not have a reasonable expectation of privacy in the fraudulent prescription that he passed at Hedges Pharmacy. Although the State did not raise this issue in the circuit court, standing may be properly raised for the first time on appeal. See McCauley v. State, 842 So.2d 897, 900 (Fla. 2d DCA 2003). In response to the State’s argument, Mr. Hendley urges this court to remand this matter to the circuit court to develop further factual evidence to determine his standing as we did in State v. Fernandez, 36 So.3d 120 (Fla. 2d DCA 2010), and State v. Johnson, 40 So.3d 904 (Fla. 2d DCA 2010). But a remand for that purpose would be a futile exercise in this case.
“The law is clear that for a defendant to have standing to challenge a search, he or she must show a proprietary or possessory interest in the area of search or that there are other factors which create an expectation of privacy which society is willing to recognize as reasonable.” State v. Singleton, 595 So.2d 44, 45 (Fla.1992); see also Hicks v. State, 929 So.2d 13, 16 (Fla. 2d DCA 2006) (noting same). A number of courts have recognized that a defendant does not have a reasonable expectation of privacy in stolen property. See, e.g., Singleton, 595 So.2d at 45 (no standing to challenge the search of a vehicle that the defendant was not authorized to drive); Hicks, 929 So.2d at 16-19 (no reasonable expectation of privacy in a stolen computer); State v. Lennon, 963 So.2d 765, 769-70 (Fla. 3d DCA 2007) (no expectation of privacy in a stolen jet ski or trailer); State v. Bostick, 745 So.2d 496, 497 (Fla. 1st DCA 1999) (no standing to challenge seizure of items obtained from a stolen car); Tongue v. State, 544 So.2d 1173, 1175 (Fla. 5th DCA 1989) (no legitimate expectation of privacy in a stolen vehicle). “The Fourth Amendment does not protect a defendant from a warrantless search of property that he stole, because regardless of whether he expects to maintain privacy in the contents of the stolen property, such an expectation is not one that ‘society is prepared to accept as reasonable.’ ” Hicks, 929 So.2d at 17 (quoting United States v. Caymen, 404 F.3d 1196, 1200 (9th Cir.2005)).
For reasons similar to those expressed about stolen property, we conclude that society would not recognize as reason *300 able any asserted expectation of privacy in a fraudulent prescription. The passing of fraudulent prescriptions obviously contributes to the illegal sale and to the abuse of controlled substances. Sadly, the proliferation of fraudulent prescriptions frequently makes it more difficult for people with valid prescriptions for controlled substances to obtain their required medications. And although we recognized in Tamulonis that “[a]n individual has a privacy interest in his or her prescription records,” we did not conclude that an individual has a privacy interest in a fraudulent prescription. 39 So.Sd at 528.
Here, Mr. Hendley did not submit any evidence to establish that he had a reasonable expectation of privacy in the prescription that Detective Armstrong obtained from Hedges Pharmacy. And it was undisputed in the circuit court that Mr. Hendley filled a prescription at Hedges Pharmacy for oxycodone purportedly written by Dr. Barry Kruglick and that Dr. Kruglick’s first name is actually Bruce. Thus the subject prescription was indisputably fraudulent, and Mr. Hendley did not have a reasonable expectation of privacy in it. It follows that he lacked standing to challenge the State’s search and seizure of that prescription. Because the essential facts are undisputed, and because we conclude that the Sarasota detectives were authorized to obtain the prescription under section 893.07(4), it would be a waste of judicial resources to remand this case for the circuit court to hold additional proceedings and to make findings about Mr. Hendley’s standing.
For these reasons, we affirm Mr. Hend-ley’s judgment and sentence for obtaining a controlled substance by fraud.
Affirmed.
MORRIS, J., Concurs.
LaROSE, J., Concurs with opinion.

. See U.S. Const, amends. IV, XIV; art. I, § 12, Fla. Const.

. See § 893.03(2)(a)(l)(o).

.The bulletin indicated that Mr. Hendley had passed a fraudulent prescription purportedly written by a different doctor.

. The circuit court did not specifically address Mr. Hendley's argument that the information obtained from Sarasota Emergency Associates should also have been suppressed. We observe that proof of Mr. Hendley’s status as a patient with Dr. Newman in 2007 was probably not necessary for the State to prove its case. And, on appeal, Mr. Hendley does not address his claim made in the circuit court that the detectives improperly obtained his medical information from the doctors' office. For these reasons, we do not consider that issue in this opinion.

. § 395.002(16).