ALTENBERND, Judge,
Concurring in part and dissenting in part.
I recognize that the court’s opinion in this case is in full accord with a significant body of case law from more than one district.[2] But I also recognize that the *896 citizens of this state created an express constitutional right of privacy in 1980. See art. I, § 23, Fla. Const. Although prescription drug abuse is a serious and deadly problem requiring a strong response from the State, I am not convinced that it is constitutional to interpret section 893.07(4), Florida Statutes (2007 & 2008), to authorize a deputy sheriff, without any reasonable suspicion, to send a “blast-fax” to every pharmacy in a large region of Florida compelling information about prescriptions on file for a randomly selected citizen. I agree that the trial court’s basis for granting this motion was incorrect. On the other hand, the ruling might be correct based on a proper analysis of section 893.07(4). During the proceedings on remand, I conclude that the trial court has authority to conduct an additional hearing to establish whether Mr. Albritton had a privacy interest in his prescriptions that were on file with a pharmacy and, if so, whether section 893.07(4), as interpreted by the State, serves “a compelling state interest and accomplishes its goal through the use of the least intrusive means.” See Winfield v. Div. of Pari-Mutuel Wagering, 477 So.2d 544, 547 (Fla.1985).
I also recognize that a panel of this court has issued an opinion concluding that section 893.07(4) is constitutional under the Winfield analysis. See State v. Tamulonis, 39 So.3d 524 (Fla. 2d DCA 2010), cert. denied, 52 So.3d 662 (Fla. Jan.3, 2011). However, that ruling was made in a case that is indistinguishable from State v. Bean, 36 So.3d 116 (Fla. 2d DCA 2010), in which this court expressly declined to accept or reject the reasoning in State v. Carter, 23 So.3d 798 (Fla. 1st DCA 2009), and resolved the case on a narrow issue so that the constitutional issue could receive full consideration in the trial court.[3] It is not clear to me why the panel in Tamulon-is did not follow this court’s approach in Bean. Whether this statute is the “least intrusive means” to enforce drug laws would appear to be an issue with an evi-dentiary component and this court has yet to receive an appeal in which the parties have seriously litigated the constitutionality of section 893.07(4) in the trial court. Accordingly, I dissent to the majority’s reliance on the discussion in Tamulonis.
I.
On April 2, 2009, the Hillsborough County Sheriffs Office received an anonymous telephone call to the “Crime Stoppers” telephone number, claiming that a man named “Benny Albritton” was “doctor shopping.” A deputy checked the records of the Department of Highway Safety and Motor Vehicles and determined that a man named “Benny Ray Albritton” existed in the State of Florida and had a driver’s license. Without any further investigation and without any subpoena or other judicial authorization, the deputy sent an automated message by facsimile machine, a so-called “blast-fax,” that “blanketed” pharmacies in Hillsborough County and unspecified surrounding counties.[4] In the fax, the deputy compelled the pharmacies to provide a list of all prescriptions filled by “Benny Ray Albritton” at that pharmacy. There is no explanation in the record *897 of whether the deputy required the pharmacies to provide information on only controlled substances or on all prescriptions on file for Mr. Albritton. The deputy, who received numerous responses to his directive, explained that the pharmacies provided information on the type and quantity of drugs prescribed and purchased, as well as the name and location of the pharmacy.
The deputy then went to the pharmacies without a subpoena and obtained additional records including “another list of the actual prescriptions that were given to Mr. Albritton.” Thereafter, the deputy went to the offices of two doctors and obtained “narcotic agreements” from the doctors without a subpoena. These documents are not in the record, but apparently they are agreements that Mr. Albritton signed and that the doctors maintain in his medical records. In the agreements, he agrees not to obtain another similar prescription without first obtaining the permission of the doctor. It is unclear from our record whether the pharmacies disclosed the identity of Mr. Albritton’s doctors in their initial responses to the “blast-fax” or when the deputy interviewed them later. Following this investigation, the State filed charges against Mr. Albritton and sought to subpoena the records that it had already received during the police investigation. The trial court granted the motion to suppress and concluded that the items in the subpoena were the fruit of the poisonous tree.
II.
As the majority opinion reflects, in this case and in many other similar cases pending in the trial courts, the primary argument has been that the pharmacy records are protected by section 395.3025(4)(d), Florida Statutes (2007 & 2008). I fully agree that this statute provides no protection for Mr. Albritton’s records. See, e.g., Bean, 36 So.3d at 118. Because the trial courts have been resolving these cases based on this statutory ground, they have properly avoided any extensive hearing on the alternative argument that section 893.07(4) violates either the Fourth Amendment or the constitutional right of privacy contained in Article I, Section 23, of the Florida Constitution. Although the panel in Tamulonis reached and discussed the constitutional issue, that case was capable of resolution in this court on a statutory ground without reaching the constitutional issue. Given that the record in Tamulonis contains no evidence on the issue of least restrictive means, I believe the trial court in this case should address this argument on remand because Mr. Al-britton raised this issue in his motion and has not yet received a hearing on it.
Section 893.07 states in its entirety:
(1) Every person who engages in the manufacture, compounding, mixing, cultivating, growing, or by any other process producing or preparing, or in the dispensing, importation, or, as a wholesaler, distribution, of controlled substances shall:
(a) On January 1, 1974, or as soon thereafter as any person first engages in such activity, and every second year thereafter, make a complete and accurate record of all stocks of controlled substances on hand. The inventory may be prepared on the regular physical inventory date which is nearest to, and does not vary by more than 6 months from, the biennial date that would otherwise apply. As additional substances are designated for control under this chapter, they shall be inventoried as provided for in this subsection.
(b) On and after January 1, 1974, maintain, on a current basis, a complete and accurate record of each substance manufactured, received, sold, delivered, *898 or otherwise disposed of by him or her, except that this subsection shall not require the maintenance of a perpetual inventory.
Compliance with the provisions of federal law pertaining to the keeping of records of controlled substances shall be deemed a compliance with the requirements of this subsection.
(2) The record of controlled substances received shall in every case show:
(a) The date of receipt.
(b) The name and address of the person from whom received.
(c) The kind and quantity of controlled substances received.
(3) The record of all controlled substances sold, administered, dispensed, or otherwise disposed of shall show:
(a) The date of selling, administering, or dispensing.
(b) The correct name and address of the person to whom or for whose use, or the owner and species of animal for which, sold, administered, or dispensed.
(c) The kind and quantity of controlled substances sold, administered, or dispensed.
(4) Every inventory or record required by this chapter, including prescription records, shall be maintained:
(a) Separately from all other records of the registrant, or
(b) Alternatively, in the case of Schedule III, IV, or V controlled substances, in such form that information required by this chapter is readily retrievable from the ordinary business records of the registrant.

In either case, records shall be kept and made available for a period of at least 2 years for inspection and copying by law enforcement officers whose duty it is to enforce the laws of this state relating to controlled substances.

(5)Each person shall maintain a record which shall contain a detailed list of controlled substances lost, destroyed, or stolen, if any; the kind and quantity of such controlled substances; and the date of the discovering of such loss, destruction, or theft.
(Emphasis added.)
The State is interpreting the critical language in subsection (4) of this statute — “In either case, records shall be kept and made available for a period of at least 2 years for inspection and copying by law enforcement officers whose duty it is to enforce the laws of this state relating to controlled substances” — to mean:
Pharmacies are compelled to provide all records less than 2 years old and maintained under this section to any deputy or police officer who requests records for copying and inspection. The deputy or police officer does not need a subpoena to obtain these records but is entitled to copy the records upon displaying his or her badge and claiming to be an officer enforcing drug laws.
With all due respect to the State, I simply do not see this interpretation within the words of the statute and am not certain that the State’s reading of the statute reflects the intent of the legislature that enacted it.
The statute should be interpreted to avoid the risk that the legislature’s enactment is unconstitutional. Given that the statute contains no language about the prerequisites for law enforcement’s request of records, I would not-interpret it to give a law enforcement officer the power to obtain these records for use in a criminal case against a customer without a subpoena or some alternative demonstration of adequate suspicion coupled with an ap *899 propriate degree of independent supervision of the process.
If the statute actually gives law enforcement the power to obtain random records as the State suggests, then the courts must analyze the statute under the strict scrutiny standard established in Winfield. Assuming that people have a legitimate expectation of privacy in their prescriptions, the State must establish that the statute addresses “a compelling state interest and accomplishes its goal through the use of the least intrusive mean.” Winfield, 477 So.2d at 547.
There is no question that the State has a compelling interest in this subject. It is well known that prescription drug abuse is a deadly problem of epidemic dimensions in Florida. This statute arguably addresses at least two distinct problems. First, it attempts to monitor and regulate licensed pharmacies who can illegally traffic in controlled substances. Second, it attempts to identify customers who may be violating drug laws.
The problem lies in the fact that policing licensed, professional pharmacies does not involve the same privacy issues as random searches of customers’ prescriptions. It is entirely possible that the State may subject a pharmacy to random, unannounced administrative investigations designed to obtain evidence against the pharmacy. See, e.g., Cushing v. Dep’t of Prof'l Regulation, Bd. of Dentistry, 416 So.2d 1197 (Fla. 3d DCA 1982); Stone v. City of Stow, 64 Ohio St.3d 156, 593 N.E.2d 294 (1992). Using records obtained in such administrative searches, however, as evidence in a separate criminal case against a random customer whose records were revealed in this manner raises far different privacy issues.
It seems to me that prescriptions are currently obtained within a patient-physician relationship that creates an expectation of at least some level of privacy. Given that a prescription can only be filled when it is on file with a licensed pharmacy, the prescription on file with the pharmacy should retain a significant degree of privacy. I doubt that most Floridians would anticipate that any law enforcement officer with a badge could obtain these records without any supervision or proof of reasonable suspicion.[5] Clearly, a less intrusive means must exist to investigate this problem than allowing any officer to submit such random requests for prescription information to a pharmacy.
It is worth emphasizing that this court has not seen evidence of police officers or deputies obtaining records merely to check on their daughter’s boyfriend or out of curiosity about the family of a local politician running for office. We have only seen evidence of officers attempting to do their jobs in good faith. But then again, if law enforcement officers conduct probes for improper reasons, under the existing structure we are unlikely to ever see evidence of such misconduct. It is also worth noting that anyone can make an anonymous call to Crime Stoppers for any reason. In this case, the call that resulted in police compelling a large group of pharmacies to disclose Mr. Albritton’s prescription records would not have authorized them to conduct a brief Terry[6] stop of Mr. Albrit- *900 ton while he was walking down a public sidewalk.
Even without an evidentiary hearing, it seems obvious to me that there are means to address the State’s valid public policy interests in this case without this level of interference into private health issues. For example, even an inventory search of a car must be conducted under standardized criteria. See, e.g., Patty v. State, 768 So.2d 1126 (Fla. 2d DCA 2000). A road block to check for drunk drivers requires far more protection of privacy than the State provides under this statute. See, e.g., Campbell v. State, 679 So.2d 1168 (Fla.1996). It seems entirely possible for the legislature to enact a statute requiring pharmacies or doctors dispensing a narrow group of specified controlled substances to transmit a digital copy of information on the prescriptions it fills to a single office in the Department of Law Enforcement Administration or a similar agency within seventy-two hours of the filling of the prescription, along with the thumb print or photo identification of the purchaser. Such a narrow statute could preserve the privacy of most prescription information while allowing the State, through the use of a computer program, to quickly identify doctors, pharmacies, or customers who are involved with suspicious quantities of regulated drugs. Such a statute would not only be a less restrictive approach, but it would allow the State to regulate the abuse of prescription drugs even more effectively. It would also permit an elderly woman to obtain a prescription for a painkiller following a surgery, which she regarded as a private matter, without concern that any law enforcement officer could investigate her drug use. See, e.g., Whalen v. Roe, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977) (upholding constitutionality of state statute requiring doctors or pharmacies dispensing certain drugs to forward copies of the prescription to the state’s department of health).
Given the seriousness of the current prescription drug epidemic and the language of section 893.07(4), the legislature might be well advised to reexamine this statute.

. See, e.g., State v. Shukitis, 60 So.3d 406 (Fla. 2d DCA 2010); State v. Yutzy, 43 So.3d 910 (Fla. 2d DCA 2010); State v. Tamulonis, 39 So.3d 524 (Fla. 2d DCA 2010), cert. denied, 52 So.3d 662 (Fla. Jan.3, 2011); State v. Fernandez, 36 So.3d 120 (Fla. 2d DCA 2010); State v. Bean, 36 So.3d 116 (Fla. 2d DCA 2010); State v. Carter, 23 So.3d 798 (Fla. 1st DCA 2009); *896 Cushing v. Dep't of Prof'l Regulation, Bd. of Dentistry, 416 So.2d 1197 (Fla. 3d DCA 1982).

. Indeed the motion to suppress in Tamulon-is, 39 So.3d 524, which is still in the records of this court, relied on and attached a copy of the trial court’s order in Bean, 36 So.3d 116.

. Our record does not contain many items that would be useful in evaluating this appeal. The trial court did not require the State to provide a transcript of the anonymous call or any of the documents sent, received, or created during this investigation.

. In Tamulonis, the panel seemed to believe that the statute was narrowly written because of the phrase, "for inspection and copying by law enforcement officers whose duty it is to enforce the laws of this state relating to controlled substances.” 39 So.3d at 527. However, all law enforcement officers have a duty to enforce drug laws. There is no rule or procedure disclosed in these cases by which only a limited number of highly trained officers may enforce this statute.

. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).