74 So.3d 1119 (2011)
Evan S. GORE, Appellant,
v.
STATE of Florida, Appellee.
No. 4D10-777.
District Court of Appeal of Florida, Fourth District.
November 16, 2011.
*1120 Carey Haughwout, Public Defender, and Susan D. Cline, Assistant Public Defender, West Palm Beach, for appellant.
Pamela Jo Bondi, Attorney General, Tallahassee, and Melynda L. Melear, Assistant Attorney General, West Palm Beach, for appellee.
EHRLICH, MERRILEE, Associate Judge.
The issues in this appeal are: (1) whether the court erred by not suppressing Defendant's pharmacy records, which police obtained without a warrant or subpoena; and (2) whether the court erred by denying Defendant's motion to suppress his medical records and physician statements, which police obtained without a subpoena or Defendant's authorization. We affirm as to the first issue and reverse as to the second issue.
In 2008, Defendant pled guilty to possession of a schedule II substance. The court withheld adjudication and sentenced him to eighteen months probation. In 2009, the State charged Defendant with withholding information from a practitioner and trafficking in hydrocodone. As a result of these new law violations, the State also sought to violate his probation on the 2008 case.
Defendant filed a motion to suppress his pharmacy profile (including prescribing physicians' names), physicians' statements, and medical records. At the suppression hearing, the parties stipulated to the following facts:
The officer had reason to believe that Defendant was committing the crime of withholding information from a physician and, as such, trafficking would ensue because the prescriptions received *1121 would have been fraudulent because of the withholding information.
The officer goes to various pharmacies, pulls patient's profiles. From those patients' profiles, he finds out who the prescribing doctors are. He then goes to the prescribing doctors, in this case, Dr. Gulati and Dr. Ortega, and speaks with the doctors without any subpoena or search warrant being issued. The conversations include whether or not Defendant had disclosed previous prescriptions to the doctor. The officer also pulled and reviewed various patient documents.
In the court's order denying the motion to suppress, it stated that the officer legally obtained information from the pharmacy, and therefore, it follows that once the officer legally obtained the identity of Defendant's prescribing doctors, the officer could legally interview and gather information from Defendant's prescribing doctors.
As a result of the court's ruling on Defendant's motion to suppress, Defendant admitted the violation of probation in the 2008 case, pled nolo contendere to counts 1 and 5 in the 2009 case (the State nolle prossed counts 2, 3 and 4), and reserved his right to appeal the denial of the dispositive motion to suppress in both cases. Defendant filed a timely notice of appeal.

Issue 1Pharmacy Records
Because the facts are uncontroverted, this Court reviews de novo the lower court's legal conclusions on the motion to suppress. Ray v. State, 40 So.3d 95, 97 (Fla. 4th DCA 2010). The First and Second District Courts of Appeal, in State v. Carter, 23 So.3d 798, 800 (Fla. 1st DCA 2009), and Gettel v. State, 449 So.2d 413, 414 (Fla. 2d DCA 1984), both have held that Section 893.07(4), Florida Statutes (2008) authorizes police to search pharmacy records without a warrant. The court in State v. Tamulonis, 39 So.3d 524 (Fla. 2d DCA 2010), stated that the right to privacy protected by Article I, Section 23, of the Florida Constitution is not absolute; and the test for a violation of this right comes from Winfield v. Division of Pari-Mutuel Wagering, 477 So.2d 544, 547 (Fla. 1985):
The Florida Supreme Court has adopted a test to assess the claim of an article I, section 23 privacy violation: First, courts must determine whether the individual possesses a legitimate expectation of privacy in the information or subject at issue. If so, the burden shifts to the State to show (a) that there is a compelling state interest warranting the intrusion into the individual's privacy and (b) that the intrusion is accomplished by the least intrusive means.
Tamulonis, 39 So.3d at 528.
The Tamulonis court acknowledged that an individual has some expectation of privacy in his or her prescription records. See also State v. Fernandez, 36 So.3d 120, 123 (Fla. 2d DCA 2010). The State, on the other hand, has a compelling interest in regulating controlled substances. As the Tamulonis court stated, Section 893.07, Florida Statutes, is narrowly tailored:
First, the statute only applies to controlled substance records. Second, the records do not convey information about a patient's medical condition. Finally, such data is not available to the general public, but only to "law enforcement officers whose duty it is to enforce the laws of this state relating to controlled substances." § 893.07(4); see also State v. Russo, [259 Conn. 436] 790 A.2d [1132] at 1150-51 [2002] (finding that pharmacy statute safeguards privacy interests by restricting access to controlled substance records to a limited class of persons).
Tamulonis, 39 So.3d at 528.
Justice Johnson of the Vermont Supreme Court, in her dissenting opinion in *1122 State v. Welch, 160 Vt. 70, 624 A.2d 1105 (1992), eloquently explains why the disclosure and use of pharmacy records are so narrowly tailored:
Such records `contain extremely private and potentially embarrassing information' about the patient. They may disclose highly personal facts concerning a person's lifestyle, ailments, or sources of stress and anxiety. These are matters of great sensitivity that go to the heart of our concerns for privacy. This fact is recognized by the very statutory provision that permits inspection of pharmacy records, which is entitled "Records confidential." That provision allows inspection "only to federal or state officers or their specially authorized agent whose duty it is to enforce the federal drug laws," and forbids those who gain knowledge of any prescription from divulging such knowledge, except in connection with a prosecution.
Id. at 1116 (Johnson, J., dissenting) (internal citations omitted).
Although the Florida Supreme Court has recognized the right to privacy as a fundamental right, it has also made clear that "this constitutional provision was not intended to provide an absolute guarantee against all governmental intrusion into the private life of an individual." Fla. Bd. of Bar Exam'rs Re: Applicant, 443 So.2d 71, 74 (Fla.1983).
Clearly, there is a balancing test as to this issue and the State's compelling interest has been held to be paramount, but the restrictions placed upon the State address the balancing test as well. Thus, we conclude that the police may secure pharmacy records of Chapter 893 controlled substances pursuant to a criminal investigation, but not pharmacy records of all prescriptions. There is some expectation of privacy in pharmacy records. The police may obtain the permitted records without obtaining a warrant or a subpoena. Doctors' names appear on all prescription records; hence, the police may secure doctors' names on Chapter 893 pharmacy prescription records, as well, without a warrant or a subpoena.

Issue IIMedical Records
As to the second issue, we conclude that the trial court erred by denying Defendant's motion to suppress his medical records and physician's statements, which police obtained without a subpoena or Defendant's authorization. Medical records and physician's statements are protected by the statutory physician-patient privilege, and therefore, the State was required to get either a subpoena with court approval or prior notice to and authorization from Defendant. See §§ 456.057(6) & (7)(a), Fla. Stat. (2008).
The fact that the police had already secured doctors' names from prescriptions at pharmacies does not waive the requirements of law. There is a danger of medical professionals willing to surrender private medical records and engage in discussions regarding private and privileged communications concerning their treatment of individuals in submission to apparent police authority.
The language in Section 456.057 is intentionally broad in protecting information from being disclosed by a health care practitioner and in assuring that the condition of a patient may not be discussed. The protection extends to all patient records. The State is not precluded from obtaining the information it seeks. Its agents must only follow the law and either seek a patient's written authorization or the issuance of a subpoena from a court of competent jurisdiction and proper notice to the patient or a search warrant.
*1123 The object of the physician-patient privilege is to encourage patients to be entirely forthcoming and candid in their statements to their treating physicians. These conversations and the records with regard thereto protect our most fundamental right, the pursuit of life itself.
Affirmed in part and Reversed in part.
POLEN, J., concurs.
WARNER, J., concurs specially with opinion.
WARNER, J., concurring specially.
I fully concur in the majority opinion. I write only to address the appellant's brief in which Justice Denise Johnson of the Vermont Supreme Court is referred to as "he." Justice Johnson, a well-respected jurist, who retired this September, is a personal and professional acquaintance of mine, so I was attuned to the error in the brief immediately.
I point out the inappropriate use of the male pronoun, because too often I see female jurists referred to as males. For instance, many times I noted Judge Winifred Sharp of the Fifth District Court of Appeal also referred to with a male pronoun.
It is easy enough to find the gender of a judge, either from Westlaw or LexisNexis, or by going to a court's website and finding the judge's biography. In this day and age, mistakes like this should not be made and it shows inattention in brief-writing that should be avoided. My advice is that if the lawyer does not wish to take the time to find out the gender of the judge being quoted in the brief, then no personal pronouns should be used.