**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 1, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

v.

MARTHA EARLENE PHILLIPS,

       Defendant - Appellant.

No. 11-6000
(D.C. No. 5:10-CR-00017-HE-7)
(D. W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **HARTZ**, and **O'BRIEN**, Circuit Judges.

After Martha Phillips was arrested in connection with a drug trafficking scheme,

she moved to suppress evidence of her involvement, claiming it was obtained illegally.

Specifically, she challenged the constitutionality of the Oklahoma law authorizing

investigators to obtain prescription drug records without a warrant. She also challenged

---

[*] Oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). We have decided this case on the briefs.

This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1. It is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). *Id.*

the legality of a wiretap. Following the district court's denial of her motion, Phillips proceeded to trial, where a jury convicted her of distributing and conspiring to distribute OxyContin. We affirm.

## I. BACKGROUND

Phillips supplied OxyContin to a family trafficking operation run out of an air-conditioning business in Norman, Oklahoma. She obtained prescriptions from a doctor recommended by the distributors and was paid based on the volume of pills she passed on to the trafficking operation. She continued her illegal activities for over a year, supplying more than 1000 40mg tablets.

Law enforcement officers began monitoring the operation several months after Phillips became involved. The investigation, which spanned more than a year, was an enormous undertaking, involving two wiretaps, three controlled buys, half-dozen confidential informants, and hundreds of hours of surveillance. In the end 24 people were charged in connection with the trafficking operation; 23 pled guilty. Phillips was the lone defendant to proceed to trial.

Investigators compiled an impressive case against Phillips. Using a wiretap, they intercepted a phone conversation in which she agreed to meet one of the distributors at a pharmacy to purchase an OxyContin prescription. Investigators then captured the drug deal on video. In addition, investigators obtained records of Phillip's OxyContin prescriptions from the Oklahoma Prescription Monitoring Program ("OPMP"). The OPMP was created by the Oklahoma Anti-Drug Diversion Act, OKLA STAT. tit. 63, §§ 2-309A-309H, which requires dispensers of oxycodone operating in state to furnish

2

prescription records to a central repository to be made available to law enforcement officers conducting criminal investigations. According to OPMP records, Phillips had obtained and filled nineteen 60-pill OxyContin prescriptions in a period of over 20 months.

Phillips moved to suppress all prescription records obtained under the Anti-Drug Diversion Act. She claimed law enforcement accessed the records from the OPMP without a search warrant, thereby violating her Fourth Amendment rights. She also claimed the evidence obtained from the wiretap should be excluded because investigators failed to demonstrate the need for the wiretap.

The district court rejected both arguments. Without passing on the constitutionality of the Anti-Drug Diversion Act, the judge concluded the exclusionary rule does not apply because the constitutionality of the Anti-Drug Diversion Act was not in question when investigators obtained access to Phillip's records. They reasonably believed they could obtain the information as permitted by statute. With respect to the wiretap, the trial judge decided there was no basis for excluding the conversations because the judge who authorized the wire taps had reasonably concluded normal investigative procedures were insufficient to achieve the objectives of the investigation.

## II. DISCUSSION

### A. The Anti-Drug Diversion Act

Phillips argues the prescription records obtained from the OPMP should have been suppressed because the Anti-Drug Diversion Act is unconstitutional. She maintains any law which gives investigators license to search private records without regard to the

3

limitations of the Fourth Amendment cannot be upheld.

The district court properly looked past her arguments. Typically, the remedy for a Fourth Amendment violation is the exclusion of evidence obtained from an unlawful search. *Illinois v. Krull*, 480 U.S. 340, 347 (1987). But the exclusionary rule does not apply where officers act in reasonable reliance upon a statute, because justice is not served by punishing officers for the mistakes of the legislature. *Id*. at 349; *United States v. Leon*, 468 U.S. 897, 923 (1984). Accordingly, in reviewing a motion to suppress, a court may consider whether the good-faith exception applies to a search without passing on the constitutionality of the authorizing statute. *See United States v. Cardenas-Alatorre*, 485 F.3d 1111, 1115 (10th Cir. 2007) (assuming, without deciding, unconstitutionality of New Mexico statute).

The district court did so here, concluding, correctly, that the officers had no reason to question the validity of the Anti-Drug Diversion Act. Even assuming the statute is ultimately found to be unconstitutional, there is no dispute it stood on solid ground at the time investigators relied upon it. It had not been called into question before Oklahoma courts.and similar statutes have been upheld in other jurisdictions, *see, e.g., State v. Tamulonis*, 39 So.3d 524, 528 (Fla. Dist. Ct. App. 2010) *cert denied*, 50 So.3d 662 (Fla. 2011); *Williams v. Commonwealth*, 213 S.W.3d 671, 684 (Ky. 2007), and while the Supreme Court has held databases like the OPMP can exist in harmony with a constitutional right to privacy, *Whalen v. Roe*, 429 U.S. 589, 603-04 (1977), neither the Supreme Court nor this Court nor any Oklahoma court has considered whether a law permitting the warrantless disclosure of drug records runs afoul of the Fourth

Amendment. At worst, then, the validity of the Oklahoma statute remains an open question, hardly grounds for an officer to refuse to enforce it. *See Cardenas-Alatorre*, 485 F.3d at 1117 (holding that police must enforce duly enacted statutes except in "the most extreme of cases.").

## B. Wiretap

In urging suppression of recordings of her phone conversations, Phillips argues the wiretap was requested out of convenience, not necessity as the statute requires.

The propriety of a wiretap, and any evidence it yields, hinges on whether the government can demonstrate "necessity." 18 U.S.C. § 2518(1)(c). To establish necessity, the wiretap application must include a "full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried." *Id*. Section 2518 is not an exhaustion requirement, and the government need not experiment with traditional investigative techniques if the affidavits explain "why the officers believed such techniques would be ineffective or dangerous." *United States v. Foy*, 641 F.3d 455, 464 (10th Cir. 2011) *cert. denied*, 132 S. Ct. 467 (2011). The government's burden is non-exacting, and we review the authorizing judge's determination that a wiretap was necessary for an abuse of discretion. *United States v. Zapata*, 546 F.3d 1179, 1185 (10th Cir. 2008).

The affidavit submitted in support of the application was sufficient to support the conclusion that the wiretaps were necessary. There could be no doubt, after reviewing the wiretap application, that investigators could not have achieved their goal with normal

5

investigative techniques. The objective was to bring down the trafficking scheme, not just weaken it, and toward that end the confidential informants were coming up short, unable to provide information on several high-level members of the conspiracy. *See United States v. Ramirez*, 479 F.3d 1229, 1241 (10th Cir. 2007) (wiretap appropriate where use of confidential informants was ineffective) (overruled on alternate grounds). Investigators used caller-identification devices to identify the main players and their associates, but the long lists of phone numbers shed no light on the content of their conversations. They tried physical surveillance, but most transactions occurred in dimly lit cars or inside the air-conditioning business, where it was impossible to distinguish drug traffickers from legitimate customers. They even considered infiltration, but since the trafficking operation was a family business with a closed clientele and scarce ties to outsiders, an undercover agent would have run a high risk of being detected. A search warrant was another alternative, and investigators undoubtedly had enough evidence to support one, but the possibility of showing their hand prematurely and scaring off potential suspects was prohibitively high.

In the end, the district court reasonably concluded the government met the necessity requirement. Normal investigative techniques carried the investigation only so far, and there were still suspects to pursue and dots to connect when the government sought authorization for a wiretap. Indeed, without a wiretap, investigators may never have built a case against Phillips, whose identity was brought to their attention during a monitored call with one of the key distributors.

6

AFFIRMED.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge